IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

SAVINA R. WHITNEY,                          3:10-CV-01403-HU

      Plaintiff,                            ORDER

v.

MICHAEL J. ASTRUE,
Commissioners of Social
Security,

      Defendant.


**BROWN, Judge.**

    Magistrate Judge Dennis James Hubel issued Findings and

Recommendation (#21) on January 17, 2012, in which he recommended

the Court affirm the Commissioner's decision denying Plaintiff's

application for disability insurance benefits (DIB) and

supplemental security income (SSI).  Plaintiff filed timely

Objections to the Findings and Recommendation.  The matter is now

1 - ORDER

before this Court pursuant to 28 U.S.C. § 636(b)(1) and Federal
Rule of Civil Procedure 72(b).

When any party objects to any portion of the Magistrate
Judge's Findings and Recommendation, the district court must make
a *de novo* determination of that portion of the Magistrate Judge's
report.  28 U.S.C. § 636(b)(1).  *See also Dawson v. Marshall*, 561
F.3d 930, 932 (9th Cir. 2009); *United States v. Reyna-Tapia*, 328
F.3d 1114, 1121 (9th Cir. 2003)(*en banc*).

In her Objections, Plaintiff contends, among other things,
that the Magistrate Judge (1) erred in his evaluation of the
ALJ's assessment of Plaintiff's Mental Residual Functional
Capacity (MRFC) and (2) failed to apply Ninth Circuit precedent
related to rejection of lay-witness testimony and reliance on
testimony of the Vocational Expert (VE) at Step Five of the
analysis.

## I.   Evaluation of the ALJ's assessment of Plaintiff's MRFC

Plaintiff contended in her opening and Reply briefs that the
ALJ failed to comply with the applicable regulations when
evaluating Plaintiff's MRFC.  The Magistrate Judge properly
concluded the ALJ properly relied on the state agency
consultant's MRFC and Psychiatric Review Technique forms.  The
Magistrate Judge noted, however, that

> [t]he parties overlook an additional justification
> for the ALJ's ultimate finding that Whitney's
> mental limitation did not result in a finding of
> disability during the closed period.  Even if one

were to assume *arguendo* that Whitney's mental
limitations were sufficiently severe to prevent
her from working for a portion of the closed
period, the record does not contain substantial
evidence to support a finding that she was limited
to that degree for a period of 12 months or more,
as required for a finding of disability. *See* 42
U.S.C. § 423(d)(1)(A). Whitney was at her worst,
in terms of her bipolar disorder, at the beginning
of the closed period, the first of November 2006,
when she entered the clinical trial. By January
25, 2007, she reported being "virtually symptom-
free." (A.R. 259). Although it took a few months
to get her medications adjusted properly to
relieve her fatigue, the record indicates this was
accomplished by June 2007. From June 14, 2007,
forward, there are no additional treatment records
and no indication that Whitney's medications were
changed. Nevertheless, by the following June, she
felt able to return to full-time work. Thus, the
record evidence indicates Whitney was severely
limited by her bipolar disorder, if at all, only
from November 2006 to June 2007.

Findings and Recommendation at 31-32.

Plaintiff contends in her Objections that the Magistrate
Judge's finding is contrary to the ALJ's finding that Plaintiff
had a severe, medically-determinable combination of impairments,
including bipolar disorder, and that these impairments lasted for
at least 12 months during the period at issue.[1]  Tr. 21.
Plaintiff also asserts the ALJ did not rely on this rationale in
making his decision, and, therefore, the Magistrate Judge's *post-
hoc* rationalization may not be the basis for the Court to uphold
the ALJ's decision.

---

[1] This matter involved a closed period of disability from
November 1, 2006, through June 30, 2008.

3 - ORDER

The Court agrees this is contrary to the ALJ's finding that Plaintiff had the severe impairment of bipolar disorder and that the Court may not provide *post-hoc* rationalizations for the ALJ's decision. *See Hassen v. Comm'r*, 421 F. App'x 738, 739 (9th Cir. 2011) ("Although the record provides reasons to discount Mackey's testimony, [the court] cannot provide *post-hoc* rationalizations for the ALJ's decision.").

Accordingly, although the Court adopts the Findings and Recommendation to the extent that the Magistrate Judge concludes the ALJ properly rejected Plaintiff's testimony for other reasons, the Court declines to adopt that portion of the Findings and Recommendation in which the Magistrate Judge finds the record does not contain substantial evidence to support a finding that Plaintiff's mental limitations were sufficiently severe to prevent her from working for a period of 12 months during the closed period.

**II.  Lay-witness testimony**

Plaintiff contends the ALJ erred when he improperly rejected the Third Party Function Report of Plaintiff's friend, Gail Stadler, because the ALJ failed to provide legally sufficient reasons supported by the record for doing so and the Magistrate Judge erred when he concluded the ALJ did not err.

Lay testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless he "'expressly

determines to disregard such testimony and gives reasons germane to each witness for doing so.'" *Evans v. Comm'r*, 320 F. App'x 593, 596 (9th Cir. 2009)(quoting *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)).  When "'the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'" *Graham v. Comm'r*, 441 F. App'x 487, 489 (9th Cir. 2011)(quoting *Stout v. Comm'r*, 454 F.3d 1050, 1056 (9th Cir. 2006)).

     The ALJ found Stadler's

          report of [Plaintiff's] physical limitations and
          "chronic mood swings" are generally consistent
          with the evidence of record during the relevant
          period.  I given [*sic*] partial weight to
          Ms. Stadler's observations, to the extent they are
          consistent with the residual functional capacity
          found herein.  Some of the limitations reported by
          Ms. Stadler, particularly [Plaintiff's] physical
          limitations, are not fully consistent with the
          medical and other evidence of record.

Tr. 25.

     In the Findings and Recommendation, the Magistrate Judge concludes:

          To the extent, if any, that the ALJ's assessment
          of Whitney's subjective complaints and of
          Stadler's third-party report failed to rise to the
          level of particularity required by Ninth Circuit
          case law, *see Smolen, supra*, and other cases cited
          by Whitney in her brief, Dkt. #15, p. 15, any such
          failure was harmless error.  As noted in the

> previous section of this opinion regarding
> Whitney's mental impairment, even assuming
> Whitney's physical symptoms were as severe as she
> alleges, the record evidence does not establish
> that those symptoms were disabling; *i.e.*, that
> they lasted for a period of 12 months or more.
> The ALJ's ultimate determination that Whitney was
> not disabled during the closed period is supported
> by substantial evidence in the record, even if
> Whitney's and Stadler's testimony is given
> substantial weight.

Findings and Recommendation at 34-35.

The Court finds the ALJ did not provide specific and germane reasons for partially rejecting Stadler's observations.  In addition, for the reasons noted, the Court declines to adopt that portion of the Findings and Recommendation in which the Magistrate Judge finds the record does not contain substantial evidence to support a finding that Plaintiff's mental limitations were sufficiently severe to prevent her from working for a period of 12 months during the closed period.  Moreover, the Court does not consider the ALJ's error to be harmless because the Court cannot "confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination."

Accordingly, the Court declines to adopt that portion of the Findings and Recommendation in which the Magistrate Judge concludes the ALJ properly rejected portions of Stadler's testimony.

6 - ORDER

### III. Reliance on VE's testimony at Step Five

Plaintiff asserts the ALJ erred at Step Five when he relied on the testimony of the VE and found Plaintiff was able to perform other work in the national economy because all of the jobs identified by the ALJ require a "reasoning level" of 3, which is beyond Plaintiff's RFC limitation to "simple, 1-2 step tasks."

In his Findings and Recommendation, the Magistrate Judge finds the ALJ did not err when he relied on the VE's testimony regarding jobs that Plaintiff could have performed in the national economy during the period at issue.  The Magistrate Judge reasons:

> The Commissioner further argues, however, that the [*Dictionary of Occupational Titles*] DOT's "reasoning level" classification for the jobs identified by the VE is not controlling, and can be rebutted by contradictory expert testimony. Dkt. #17, p. 24 (citing *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995)("We make explicit here that an ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation."). The ALJ specifically questioned the VE in this case about conflicts between his opinions regarding the skill level required for the cited jobs and that listed in the DOT.  The VE explained that he was relying on more recent publications, including publications by the State of Oregon Employment Department, which indicated the identified jobs actually should be classified as unskilled. (A.R. 70-71).  Because the VE gave a reasonable explanation for his deviation from the DOT, the ALJ was entitled to rely on the VE's opinion regarding jobs Whitney could have performed during the closed period.  *See Massachi v. Astrue*, 486 F.3d 1149, 1152-54 (9th Cir. 2007).

Findings and Recommendation at 36.

Plaintiff contends in her Objections that the Magistrate Judge confuses the reasoning level of the jobs at issue with the specific vocational preparation (SVP) level of those jobs. The DOT identifies jobs with an SVP level of 1 or 2 as unskilled, jobs with an SVP of 3 or 4 as semi-skilled, and jobs with an SVP of 5 or higher as skilled. *See* Social Security Ruling 00-4p. The VE's testimony at the hearing addressed only the SVP level of the jobs at issue. The VE did not testify about the separate concept of reasoning level, which addresses the complexity of the duties associated with various jobs.

In *Ball v. Astrue* the ALJ limited the Plaintiff to "simple, routine, repetitive work with occasional complex tasks," but relied on the VE's testimony and concluded the plaintiff could perform jobs in the national economy that "carr[ied] reasoning levels of three and four" under the DOT. No. CV-09-764-HU, 2010 WL 3420166, at *15 (D. Or. Aug. 27, 2010). The court concluded the ALJ's finding at Step Five was not supported by the record:

> Reasoning level three is defined as the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form[, and to] [d]eal with problems involving several concrete variables in or from standardized situations." DOT, App. C, 1991 WL 688702.
>
> * * *
>
> In *Meissl v. Barnhart*, 403 F. Supp. 2d 981 (C.D. Cal. 2005), the court explained that a "job's

reasoning level . . . gauges the minimal ability a worker needs to complete the job's tasks themselves." *Id.* at 983 (distinguishing reasoning levels from the SVP level). "[T]he issue of a job's simplicity . . . appears to be . . . squarely addressed by the GED reasoning level ratings." *Id.* (internal quotation and brackets omitted). Thus, in *Meissl*, "[t]he one vocational consideration directly on point with the limitation [to simple tasks performed at a routine pace] contained in the RFC is a job's reasoning level score." *Id.* Accordingly, . . . the DOT indicates that a job classification's particular reasoning level corresponds directly to the reasoning skills required for the worker to satisfactorily perform that particular job.

Several courts have found level two reasoning to be consistent with the ability to do simple, routine and/or repetitive work tasks. *See, e.g., Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005)(Level 2 reasoning more consistent with limitation to simple, routine work tasks); *Meissl*, 403 F. Supp. 2d at 983-85 (limitation to simple, repetitive tasks closer to level 2 reasoning); *Flaherty v. Halter*, 182 F. Supp. 2d 824, 850-51 (D. Minn. 2001). . . . I agree with plaintiff that while the RFC in this case allows for the occasional complex task, the DOT classifications indicate that the requisite reasoning level applies to the particular job as it is regularly performed.

The problem here is the failure of the VE to explain how plaintiff, with the limitations given by the ALJ, can perform the jobs cited by the VE given the reasoning levels assigned to those jobs by the DOT. On the present record, there is a conflict with the VE testimony and the DOT. As explained above, in such cases the ALJ may credit the VE testimony, but only when the record shows that the ALJ has obtained a "reasonable explanation" for the conflict and then explains a basis for relying on the VE rather than on the DOT. Although the VE may have been able to provide such an explanation, in this case the ALJ failed to obtain one.

*Id.*, at *16.

Here, as in *Ball*, there is a conflict between the VE's testimony that Plaintiff could perform jobs in the national economy that carry a reasoning level of 3 and the ALJ's RFC assessment that Plaintiff was limited to simple 1-2 step tasks. Also as in *Ball*, the ALJ failed to provide an explanation for relying on the VE rather than on the DOT, and the VE did not provide any explanation for his assessment of Plaintiff's ability to perform jobs with a reasoning level of 3.

Accordingly, the Court declines to adopt that portion of the Findings and Recommendation in which the Magistrate Judge finds the ALJ did not err when he relied on the VE's testimony regarding jobs in the national economy that Plaintiff could perform during the period at issue.

## IV.  **Remand for further proceedings**

Generally the decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the Court. *Strauss v. Comm'r*, 635 F.3d 1135, 1137 (9th Cir. 2011).  The Ninth Circuit, however, has established a limited exception to this general rule.  *Id.* at 1138.  Under the limited exception, the Court must grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally
> sufficient reasons for rejecting such
> evidence, (2) there are no outstanding issues
> that must be resolved before a determination

> of disability can be made, and (3) it is
> clear from the record that the ALJ would be
> required to find the claimant disabled were
> such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1178 n.2 (9th Cir. 2000).

The Court has determined the ALJ erred when he failed to provide legally sufficient reasons for rejecting portions of Stadler's statement and when he relied on the VE's testimony regarding jobs in the national economy that Plaintiff could perform during the period at issue. As a result, the Court concludes the Administrative Record is not sufficiently clear to determine whether Plaintiff is entitled to immediate benefits. In the exercise of its discretion, therefore, the Court concludes the limited exception does not apply and finds this matter should be remanded for further proceedings. *See Schneider v. Comm'r*, 223 F.3d 968 (9th Cir. 2000). *See also Reddick*, 157 F.3d at 729.

Accordingly, the Court declines to adopt the Magistrate Judge's recommendation that the Court affirm the decision of the Commissioner.

## CONCLUSION

The Court **DECLINES TO ADOPT** those portions of the Findings

and Recommendation (#21) in which the Magistrate Judge (1) finds the record does not contain substantial evidence to support a finding that Plaintiff's mental limitations were sufficiently severe to prevent her from working for a period of 12 months during the closed period, (2) finds the ALJ did not err when he rejected portions of Stadler's statement, (3) finds the ALJ did not err when he relied on the VE's testimony regarding jobs in the national economy that Plaintiff could perform during the period at issue, and (4) recommends the Court affirm the decision of the Commissioner.

The Court **ADOPTS** the remainder of the Findings and Recommendation and **REMANDS** this matter for further administrative proceedings consistent with this Order.

IT IS SO ORDERED.

DATED this 1st day of March, 2012.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge